McKinney, J.
delivered the opinion of the court.
This is an action of debt, brought in the Circuit Court of Williamson county, by the defendant in error as administrator of Nancy Brown deceased, upon the record of a judgment rendered in the Circuit Court of Hopkins county, Kentucky. From the statement of facts agreed upon by the parties, it appears, that on the 4th day of September, 1833, the intestate, (being then a feme sole, under the age of twenty-one) recovered a judgment against the plaintiff in error, Swancy, in said Circuit Court of Hopkins county, for the sum of $1000 00 damages for an injury to her person; both plaintiff and defendant at the time being citizens and inhabitants of said State.
Shortly after the rendition of the judgment, Swancy removed to Williamson county'in this State, where he has ever since resided. The intestate continued to reside in *328 Kentucky, and afterwards intermarried with one Brown who survived her. At the death of the intestate said judgment remains and still remained wholly unsatisfied; and was never revived in the names of Brown and wife, or of the personal representative of the intestate, nor does it appear, indeed, that administration upon her estate, was ever granted in Kentucky — the place of her domicil. Prior to the institution of this suit, letters of administration upon the intestate’s estate were granted to the defendant in error, under the' act of 1841, ch. 69, by the County Court of Williamson, for the purpose of enabling him to institute this suit — there being no effects or assets of any kind belonging to her estate within the jurisdiction of this State, except said judgment debt.
By the act above referred to administration may be granted “ upon the estate of any person who was a nonresident at the time of his death where the deceased had any goods, chatties, or assets, or any estate real or personal in this state to be administered at the time of his death, or at the time such letters are applied for; and in like manner such letters may be granted, where any suit is to be brought or prosecuted or defended, in which the estate of such' decedent is interested,” &c. The authority of the County Court to grant the letters of administration to the defendant in error in this case, under the above recited act, cannot be, and is not indeed, seriously questioned. But it is argued that such grant of administration was •inoperative as respects the judgment in question; that •it did not constitute the defendant in error the representative of the decedent, or vest him with any such legal interest in, or title to, said judgment, as to enable him to maintain an action thereon.
This argument rests upon the principle of the ecclesiasti *329 cal law of England that a judgment is bona notabilia, or assets in the place where it was rendered, and, therefore, the jurisdiction to grant administration, in respect to the judgment sued upon in this case, belonged exclusively to the probate court of Hopkins county, Ky.; that the legal interest in said judgment and the right to sue for and collect the money due thereon, would vest alone in such administrator, and that by necessary consequence, the administration here was void, and conferred no title on the defendant in error. This is 'a question of much importance, especially in view of the peculiar relations existing between the several States of this Union — their increasing commercial and social intercourse and the migratory character and habits of their population. ■ These considerations would seem to demand a liberal and enlightened spirit of comity in the judicial as well as legislative departments of the several States, towards the citizens of other States, so far at least as is compatible with the duties each may owe to its own citizens. It is highly essential to the purposes of justice that it should be so, as is illustrated by the case under consideration; for if the present action cannot be maintained, there will be of necessity, in respect to the debt in question, an utter failure of justice.
Has the principle of the ecclesiastical or common law of England, insisted upon by the counsel for the plaintiff in error, any application to this case? We think not. We understand it to be merely a local rule or principle of probate jurisdiction, for the purpose of regulating or determining the right of granting letters testamentary or of administration, as between the different diocesan and prerogative courts within the kingdom of England. To prevent a conflict of jurisdiction between the different Bishops and Archbishops or their officers, it was established *330 that for the purposes of probate jurisdiction, judgment debts were assets where the judgment is recorded; bond or specialty debts, where the bond happens to be, and simple contract debts,' where the debtor resides, at the time of the creditor’s death. Hence the bishop of the diocese in which the judgment was recorded, or in which the bond happened to be, or in which the simple contract debtor resided at the death of the testator or intestate, was entitled to grant letters testamentary or of administration; unless the creditor died in a different diocese or had goods of the value of five pounds sterling in another diocese, in which case the jurisdiction belonged to the prerogative court of the Province. And hence two administrations upon the same estate were sometimes necessary; one In each of the Provinces of Canterbury and York. 1 Williams on Exrs., 167-184.
What then is the scope and operation of the principle ? Simply to ascertain the local jurisdiction having the rightful authority to grant letters testamentary or of administration, in the particular case.
But still the enquiry remains, what are the powers, rights, and duties of the executors or administrator, thus qualified or appointed? Could he in virtue of the power thus derived, in a ease like the present, maintain a suit, in his representative capacity, upon the record of the 'judgment rendered in'Engl and, in the courts of a foreign country to which the judgment debtor may have changed his domicil? And if not, is the judgment itself to be regarded as in the nature of a chattel, so far as to entitle him to sue thereon in his personal capacity, in any foreign jurisdiction where the debtor may be found?
It is a principle of almost universal international juris-^ prudence, recognized in England as.well as in the American *331 courts, with scarcely an exception, that the title of an executor or administrator does not extend beyond the territory of the government which grants it.. He cannot sue or be sued in his official capacity, in the courts of any country, other than that from which he derives his authority. And if he desires to maintain a suit in a foreign country he must obtain new letters of administration, and give security according to the law of that country, before the suit is brought. Story’s Confl. of laws, sec. 513. And so rigid is the law of England upon this subject, that a grant of administration there, will not extend to the King’s dominions out of England, not even to the sister kingdoms of Ireland and Scotland. Hence, it has been held that an administrator appointed in the colonies, has a right to hold the assets of which the deceased died possessed there, against the administrators appointed in England. 1 Williams on Exrs., 257-8; Ambl., 416; 2 Atk., 63; Ball and Beat., 326.
And as an executor or administrator has no power or authority to sue for or collect the assets, of which the deceased may have died possessed, in a foreign country, the law does not impose on him the duty of doing so. The grant of letters of administration in one country, gives authority to collect the assets of the deceased only in that country, and does not extend to the collection of assets in foreign countries. Story’s Confl. of laws, sec. 514. He “has no positive right to, or authority over, the assets there, neither is he responsible therefor.” /&., sec. 513.
It follows, therefore, from the foregoing principles, that while on the one hand, the court of ordinary in England, whose jurisdiction embraces the place where the judgment is recorded, (provided the judgment debtor be domiciled ■within that kingdom) is the proper tribunal' to grant *332 administration upon the estate of the deceased, at least so far as respects such unsatisfied judgment; and that the person thus appointed is the proper representative of the deceased, and alone entitled to collect and receive the proceeds thereof: still, it is very clear, on the other hand, ' that such is not the law, where the judgment debtor had removed beyond the jurisdiction, and fixed his domicil in a foreign government before such grant of administration.
In the latter case the administration in England would be wholly inoperative, and the appointee there 'would derive no claim or right whatever to the money due upon such judgment. By the law of most civilized countries, at this day, the judgment debt, in such case, would be regarded arid treated as assets in the foreign country. And the fund would be retained to meet the demand of such persons resident there, as might have claims upon it, in the character of creditors, or next of kin, if there were any such.
The general proposition, asserted in some of the books, that a judgment is assets, at the place where rendered or recorded, and a bond where it happens to be found, necessarily implies that the bond or judgment debtor is within the jurisdiction. And thus understood it is only-true in reference to the question of the jurisdiction of the ordinary; in all-other respects the proposition is not only incorrect, but likewise absurd.
The mere paper or parchment upon which the bond is written, or judgment recorded, is nothing more in reality than the evidence of a debt, and in the hands of the administrator, is not of itself, regarded as assets. He is not chargeable with a debt due to the deceased by bond •or judgment, any more than with a simple contract debt, *333 unless the money due thereon has actually been received; Until the reception of the proceeds of the' bond or judgment, he incurs no liability to creditors or other persons, in the absence of negligence or maladministration.
The common sense doctrine is, that a judgment or specialty debt, like simple contract debts, is assets where the debtor resides; and such, indeed, for all practical purposes, is the established law of this day.
And this leads to the consideration of the other question, viz.,—
Whether any title to the judgment, in a case like .the present, vests in the administrator, so as to entitle him to enforce it by suit, in his own name, in a foreign court. It would seem clear for the reasons previously stated, that he could not; but let us examine further the ground upon which this argument is based.
From the great solemnity and importance which the common law attached to bonds, judgments, recognizances, &c., they seem to have been regarded as having not only a locality or situs, but likewise as being in the nature of specific chattels; and, therefore, it has been supposed, that such an interest in a bond or judgment vested in the executor or administrator, as would enable him to sue thereon in a foreign court, in his own right, in like manner as for a chattel which had been reduced into possessson, and afterwards wrongfully taken from him. A little reflection on the subject will lead to a different conclusion.
The title to the chattels of the deceased vests in the administrator, by assignment of law, from the time he reduces them into actual possession, so as to entitle him to maintain a suit therefor, in -his own name against any one who may wrongfully deprive him of’the possession. And this title will be deemed valid, and be respected as a *334 lawful title in every other country. Story’s Confl. of law's, sec. 516.
But why is this so? Because from the moment the chattel is reduced into possession by the administrator, it becomes assets in his hands" which he is bound to administer, and with which he is chargeable, and for which he must account if lost by his default.
But we have seen that a bond or judgment debt is not assets until the money due thereon is actually realised; that it is neither the right nor duty of the administrator to collect the money, if the debtor be resident abroad, and that in such case the proceeds of the bond or judgment are assets where the debtor resides, where the money is to be collected, and not where the judgment was rendered or the bond found.
But again, what is the nature and extent of the title of an executor or administrator? In 1 Williams on Exrs., 436, it is said, the interest which an executor or administrator has in the goods of the deceased is very different from the absolute, proper, and ordinary interest which every one has in his own proper goods. He has an estate, as such, in autcr dr oil, merely, viz., as the minister or dispenser of the goods of the dead. And in 4 Term R,, 465, Ashurst J., says: “ An executor has the property only under a trust to apply it for the payment of the debts of the testator, and such other purposes as he ought to fulfil in the course of his office as executor.”
From these principles, it would seem necessarily to result, that an executor or administrator acquires an interest in the goods of the deceased only, as the law makes him liable and chargeable for their proper administration, and that as to such goods or effects as is not his right or duty to administer, no interest whatever vests in *335 him. This must be so, or the absurd consequence would follow that two opposing titles to the same chattels would be created by assignment of law, in different persons, each claiming in representation of the deceased.
It should be remarked too, in considering of this question, that in modern times, and especially in the American courts, bond and record debts have lost much of that high consideration and importance which were attached to them anciently. Here as in several other States of the Union, for many purposes. they are placed upon the same footing with simple contract debts, and the distinctions existing by ancient common law, are in a great degree substantially abolished.
The proposition, that a bond or judgment apart from the debt due thereon, and of which the paper or record is but the evidence, is to be regarded as a chattel, and as having a situs is certainly unsupported by reason, not to sáy absurd. Mr. Story lays it down that “a debt is not a corpus capable of a local position, but purely a jus incorpóraleConfl. of laws, sec., 399, and again, “ that contracts respecting personal property and debts are now universally treated as having no situs or locality, and they follow the person of the owner in point of right; although the remedy on them must be according to the law of the place where they are sought to be enforced.” Ib. sec., 362.
The difficulty of regarding a judgment as a specific chattel, is still more apparent when it is recollected, that judgments have no conclusive force or effect, as such, when sought to be > enforced in foreign courts: at most, they are treated only as prima facie evidence of debt; though in England, even as late as the case of Smith vs. Nicolls, 5 Bing. N. cases, 221, 224, it seems to have been thought, that a party who had recovered a judgment *336 in a foreign country, might sue again in the courts of England upon the original cause of action, or upon the judgment, at his option, on the ground that the original cause of action was not merged in the judgment. The inclination, however, of both the English and American courts, at present, is, to treat foreign judgments as prima facie evidence: but to what extent they are impeachable is a question upon which there is much diversity of opinion. Story’s Confl. of laws, sec.. 606-608.
Nor can a judgment be placed upon the footing of negotiable paper. In favor of commerce, bills of exchange and promissory notes have been considered as not mere choses in action, but as having a resemblance to personal chattels, on account of their transferability, so that the legal property in them passes, upon the transfer, as in the case of chattels, lb., sec. 355. , Negotiable paper” payable to the deceased, or his order, may be endorsed by his executor or administrator, so as to pass the legal title. 2 Williams on Ex., 616. And it would seem, says Mr. Story, that negotiable paper of the deceased, payable to order, actually held and endorsed by a foreign administrator or executor, in the foreign country, who is capable there of passing the legal title, by such endorsement, would confer a legal title on the endorsee, so that he ought to be treated in every other country as the legal endorsee, and allowed to sue thereon accordingly. Confl. Laws, sec. 517. Admitting the law to be so, and that the endorsee, in virtue of the title thus acquired, may sue as such in the courts of another country, where the party sought to be made liable on the bill or note has his residence (no opposition being made on the ground of an administration granted there,) still the question recurs, could such foreign executor or administrator himself maintain a suit in his *337 own name upon sueb bill or note in the courts of the country, where the debtor is domiciled ?
Upon the general principles before stated, it would seem that he could not, unless the case of negotiable paper forms an exception. And the reasoning of the court, in the case of the Attorney General vs. Bouwens, 4 Mees. & Welsb., 171, 192, would seem to lead to the same conclusion. In that case, Lord Abinger, after stating the general proposition, that no ordinary in England could perform any act of administration within his diocese, with respect to debts due from persons resident abroad, says: “But on the other hand, it is clear that the ordinary could administer all chattels within his jurisdiction; and if an instrument is created of a chattel nature capable of being transferred by acts done here and sold for money here, there is no reason why the ordinary or his appointee should not administer that species of property.” Again: “ No act of administration can be performed in this country, except in the diocese where the instruments are, which may be dealt with, and the money received by their sale in this country.” And he supposes “ the case of a person dying abroad, all whose property in England consists of foreign bills of exchange, payable to order, which bills of exchange are well known to be the subject of commerce, and to be usually sold on the Royal Exchange. The only act of administration which his administrator could perform here would be to sell the bills, and apply the money to the payment of his debts. In prder to make title to the vendee, he must have letters of administration; or to sue in trover for them if improperly withheld from him, he must have letters of administration. For, even if there were a foreign administration, it is an established rule that an administration is necessary in the country where the *338 suit is instituted.” But another question arises. Suppose an administrator has been appointed in the country where the drawer of the bill or maker of the note resides, who claims the money due upon such bill or note for the satisfaction of the claims of creditors, or of the next of kin ■ of the deceased, domiciled there. In this . conflict, whose title shall prevail? That of the endorsee of the foreign administrator, or that of the administrator where the debtor resides? If the debt in such case be assets, where the debtor resides, and if it be the duty of that government to retain the assets for the satisfaction oí the claims of its citizens, it would seem to follow that the title of the latter must be regarded as paramount; and this must be so for another reason, because the title of the administrator of the place where the debtor resides, which relates to" the time of the death of his intestate, is necessarily prior, and therefore superior to that of the endorsee, acquired by transfer from the foreign administrator. But, however all this may be, it is obvious that this peculiar principle, in reference to commercial papers, has no applicability to a judgment or other instrument rfot negotiable by the principles of international law, where the suit must be brought in the name of the legal owner, who, in a case "like the present, would be the personal representative of the deceased, appointed or recognized as such by the law of the place where the suit is brought.
But, it is furthermore argued that an administrator of the deceased, appointed by the proper Probate Court of Kentucky, might have this judgment revived there, in his name, so as to become thereby invested with the legal title thereto; and that, upon doing so, he would be entitled to sue thereon, in his own right, in the courts of this or any other State, and that, in this event a recovery in the *339 present suit by the administrator here, and payment to him, would be no bar to a suit upon the judgment by the administrator in Kentucky. To maintain the right of the foreign administrator in such case, to sue here in his name, we are referred to the case of Talmage, adm’r. vs. Chapel and others, 16 Mass. Rep., 71. In that case the plaintiff, in his representative character, had recovered a judgment against the defendants in the Court of Common Pleas for Oneida county, in the State of New York, and the defendant having afterwards removed to the State of Massachusetts, it was held that the plaintiff might maintain an action of debt in the latter State, upon said judgment, in his own name; and that he need not declare as admin-, istrator. The principle declared in this case is well sustained upon reason and authority. It is laid down in 1 Williams on Ex., 33, that “ an executor or administrator may bring an action on a judgment recovered by him as executor or administrator, and he may sue in this case either in his representative character, or in his own name. See also 2 Durn. & East’s Rep., 126. By recovering judgment for the debt due to the deceased, the administrator made the debt his own, and he could, therefore, maintain a suit upon the judgment in his own name in like manner as upon a note or bond taken, payable to himself, for a debt due to the deceased.
But, how could the case under consideration be brought within the operation of this principle ? It is said that the judgment might be revived in the name of the administrator in Kentucky, by process of scire facias, and the return of two nihils thereto. It has not been shown that, by the law of Kentucky, any such mode of reviving a judgment — where the defendant has actually changed his *340 domicil to another State — is known or recognized; and we understand that such is not the law of that State.
But suppose^ it were otherwise, and that in the mode suggested the judgment might be revived in the name of the administrator there, without personal service of process upon the defendant, who at' the time was a non-resident, would a revivor of the judgment thus obtained be regarded as of any validity, or as vesting the administrator with any interest in the judgment, in the courts of any State or country beyond the territorial jurisdiction of Kentucky? Certainly not. A scire facias to revive a judgment is treated as a new suit, and not merely a continuation of the former. It is a judicial writ, founded on some matter of record, a recognizance, judgment, &c., on which it lies to obtain execution, or for other purposes. 2 Tidd, p. 985. But because the defendant may plead thereto, it is considered in law a new action. Co. Lit., 290, Co. 291 A, 9 Yerger Rep., 471.
To the scire facias to. revive a judgment in the name of an executor or administrator, after the death of the. original plaintiff, the defendant might plead payment, or satisfaction, or release in the life-time of the deceased. So he might, on the plea of ne uniques administrator or executor, contest the legal right of the plaintiff in the scire facias, as representative of the deceased; and either of the foregoing defences, if sustained, would be a bar.
It is clear, therefore, that a judgment of revivor in Kentucky, without personal service of process upon the defendant, would be a nullity, and incapable of binding either the person or property of the defendant in the tribunals of this State. Upon general principles of international law, “ to found a proper ground of recognition of any foreign judgment in another country, it is indispensable *341 to establish that the court pronouncing judgment should have a lawful jurisdiction over the cause, over the thing, and over the parties. If the jurisdiction fails as to either, it is treated as a mere nullity, having no obligation and entitled to no respect beyond the domestic tribunals.” Story’s Confl. Laws, sec. 586.
The case of Doolittle vs. Lewis and others, 7 Johns. Ch. Rep., 45, and the case of Leake vs. Gilchrist, 2 Dev. Law Rep., 73, referred to by the counsel for the plaintiff in error, decide nothing in opposition to the right of the administrator appointed here to maintain the present action.
The former case decides that, where a mortgage of lands in New York, given to secure a debt due to a citizen of Vermont, contained a power to the mortgagee, his executors, administrators, or assigns, in case of default of payment, to sell and convey the premises; this being a special power given .by the mortgagor, and not derived from the court of another State, might be executed in New York by the executor or administrator of the mortgagee, appointed by the Probate Court of Vermont, because the power, and the exercise of it, was a matter of private contract between the parties, not derived from the grant of administration in Vermont, and, therefore, was a matter of contract, and not of jurisdiction.
But, in this case, the Chancellor distinctly declares that the courts of New York will take no notice of a foreign administration, and that administration extends only to the assets of the intestate within the State where it was granted.
The case of Leake vs. Gilchrist decides that an administrator, appointed in South Carolina, (where the intestate died,) has no right to maintain a suit in his representative *342 character in the courts of North Carolina; but that if he has in his possession a bond due to his intestate, (which the latter had in possession at the time and place of his death,) he may assign it, and bis assignee may maintain an action thereon in his own name, in the courts of the latter State, and this was so held upon the ground that, by the law of North Carolina, the bond was negotiable in like manner as promissory notes.
Upon the whole, we think the grant of administration to the defendant in error, was proper in this case, and that he may well maintain this action. With the question of succession and distribution, we have at present nothing to do. This, of course, must be according to the law of domicil of the deceased.